# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| BARBARA KANTA, | No. 58434-4-II |
| Petitioner, | |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF LICENSING, | ORDER GRANTING MOTION TO PUBLISH |
| Respondent. | |

The State of Washington, as the respondent, and the Pierce County Prosecuting Attorney's Office, as a third party, both move for publication of this Court's opinion filed on October 1, 2024. filed a motion for publication in this court's opinion filed on July 18, 2023. After consideration, the court grants the motion. It is now

**ORDERED** that the opinion will be published.

**PANEL:** Jj. Maxa, Glasgow, Cruser

**FOR THE COURT:**

_____
CHIEF JUDGE

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| BARBARA KANTA, | No. 58434-4-II |
| Petitioner, | |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF LICENSING, | UNPUBLISHED OPINION |
| Respondent. | |

CRUSER, C.J. — Barbara Kanta was arrested for driving under the influence in July 2021. Shortly after her arrest, a phlebotomist drew a sample of Kanta's blood which was sent to a laboratory for analysis. The laboratory tested Kanta's blood for alcohol in May 2022, and issued a report in September 2022 stating that Kanta's blood sample contained 0.18% alcohol. In November 2022, the Department of Licensing (the department) suspended Kanta's driving license. Kanta contested the suspension, arguing that because the vial used to store her blood expired in November 2021 (according to the manufacturer's certificate of compliance), the blood was not properly preserved and therefore did not comply with the Washington Administrative Code (WAC). A hearing examiner rejected Kanta's argument and affirmed the suspension. Kanta appealed to the superior court. The superior court found that substantial evidence supported the hearing examiner's

conclusion that the blood test complied with the necessary criteria, and was therefore properly admitted.

Kanta appeals to this court, arguing that the hearing examiner erred in admitting the results of her blood test into evidence because the vials were expired at the time of testing. As such, Kanta argues, the superior court erred in affirming the suspension of her license. The department responds that the blood test complied with all necessary criteria as designated by the state toxicologist and the administrative code, and therefore, the hearing examiner did not err in admitting the test. We agree with the department.

FACTS

I. BACKGROUND INCIDENT

In July 2021, Barbara Kanta was arrested for driving under the influence. According to a witness, Kanta's vehicle veered off the road and overturned once or twice before landing in a ditch. Kitsap County Sheriff's Deputy D.R. Corn responded to the collision. Corn advised Kanta that she was under arrest for driving under the influence. After reading Kanta her Fifth Amendment rights, Corn used a preliminary breath test (PBT) to test Kanta's breath for alcohol content. According to the PBT, Kanta's breath alcohol content registered at 0.173%.

Kanta voluntarily consented to her blood being drawn for testing. Shortly after she was arrested, she was transported to a nearby medical center, where Gillian Stockwell, a phlebotomist, drew samples of Kanta's blood. Stockwell used Deputy Corn's WSP blood draw kit to obtain the samples. Corn stated in the incident report that "[p]rior to providing this blood kit to the phlebotomist [he] checked to make sure that the tubes were in good condition, were not expired, and that the white preservative anticoagulant powder was present in the tubes." Clerk's Papers

2

(CP) at 48. After Stockwell obtained the blood samples, Corn kept the sample in his possession until entering them as evidence in the Sheriff's office in Silverdale.

Kanta's blood samples were then sent to the Seattle Toxicology Laboratory. The blood samples were tested on May 19 and May 20, 2022. In September 2022, the laboratory issued a toxicology test report, finding that Kanta's blood alcohol content registered at 0.18%.

The blood collection tube used to sample Kanta's blood was manufactured by BD Diagnostics. BD Diagnostics issued a certificate of compliance, certifying that the blood collection tube used complied with the manufacturing specifications governing the ratios of additives, as well as manufacturing and sterility regulations. According to the certificate of compliance, the tube was manufactured on December 11, 2019, and was set to expire on November 30, 2021, and it was manufactured specifically for blood alcohol determination. The certificate of compliance further provided that "[t]he chemicals added to this tube will not disturb the integrity of the blood sample relative to the alcohol content." *Id.* at 54.

## II. PROCEDURAL HISTORY

In October 2022, the department notified Kanta that her license would be suspended from November 13, 2022 until February 11, 2023. Kanta moved to rescind the suspension of her license, arguing that the blood test was not valid. An administrative hearing on the matter was held on November 2, 2022.

Elena Mack, a representative of BD Diagnostics, the test tube manufacturer, provided a declaration to Kanta. In regard to the expiration of the test tubes, Mack made the following declarations:

> 4. . . . The use of BD Vacutainer® Tubes extends beyond the date of the original blood collection. That use includes, but may not be limited to, storage of

3

the blood within the Tube, in addition to the processing (or extraction) of the blood from the Tube for testing. BD does not make any representation or claim regarding any use of any BD Vacutainer® Tubes for any purpose post-date of any Tubes' expiration date.

5. BD Vacutainer® Tubes are manufactured and guaranteed to function to accurately determine blood alcohol content up to their date of expiration. BD cannot provide any guarantee or representation regarding the function and efficacy of BD Vacutainer® Tubes after the date of their expiration, including drawing the sample post-expiration, . . . Such conclusion(s) would constitute expert testimony which I am not qualified to opine on. . . .

6. The expiration date included on BD Vacutainer® Tubes is included to ensure the product is working properly from the date of manufacture up to the certain date of expiration as predetermined at the time of manufacture. Although scientific, in general terms, the expiration of BD Vacutainer® Tubes is determined according to a specific blood: additive ratio. Specific lab testing and/or expert analysis would be necessary to determine the efficacy of any BD Vacutainer® Tubes post-expiration date, as the Tubes' expiration date, alone, likely cannot be the only factor to their efficacy.

*Id.* at 21-22.

The hearing examiner sustained the suspension of Kanta's driving license, after concluding that the collection and testing of her blood sample complied with RCW 46.61.506. The hearing examiner noted that the arresting officer "reported that the blood vials were not expired when they were used to collect the sample of Ms. Kanta's blood." *Id.* at 5-6 n.3. The hearing examiner found that "[t]he facts of the case do not show the validity of Ms. Kanta's blood test result was compromised." *Id.* The examiner noted that as Mack declared, " 'the Tubes' expiration date, alone, likely cannot be the only factor to their efficacy.' " *Id.* (quoting CP at 22).

Kanta appealed the hearing examiner's order suspending her driver's license to the Kitsap Superior Court. The superior court heard oral argument in July 2023, and found that "substantial evidence supports the hearing examiner's decision that the [d]epartment met its burden

demonstrating the blood draw and testing criteria complied with the requirements enumerated in WAC 448-14-020(3)." *Id.* at 56. The court explained that:

> The record does not establish that the use of an expired vial would cause clotted and/or unstable blood. Nor does the record establish the test results would be inaccurate by the use of the expired vials. A letter submitted by the manufacturer of the vials states that the expiration date, alone, cannot be the only factor as to the efficacy of the vials. There is nothing in the record demonstrating efficacy of the vials was affected by any other factor.

*Id.* at 57.

Accordingly, the court affirmed the hearing examiner's decision not to rescind the suspension of Kanta's license. Kanta sought discretionary review from this court. A commissioner of this court granted review.

ANALYSIS

Kanta argues that because the vials used to store her blood expired on November 30, 2021, before the blood was tested in May 2022, and before the toxicology report was issued in September 2022, the department failed to establish that the test complied with the necessary statutory and administrative requirements before suspending Kanta's license. It follows, Kanta argues, that the superior court erred in affirming the suspension. Kanta contends that the department failed to produce prima facie evidence because the department did not provide expert testimony to establish that the blood tests were reliable beyond the tube's expiration.

The department responds that the hearing examiner properly admitted Kanta's blood test results, as substantial evidence established that the tests complied with the necessary requirements for admissibility, as determined by the state toxicologist. Accordingly, the department maintains that the superior court did not err in affirming the suspension of Kanta's license. The department

also argues that after the blood test results were admitted, "the burden shifted to Kanta to refute the accuracy of the test results, thereby challenging the weight to be afforded to them." Br. of Resp't at 28.

I. LEGAL PRINCIPLES

A. Standard of Review

"We review the Department's administrative decision from the same position as the superior court." *Singh v. Dep't of Licensing*, 5 Wn. App. 2d 1, 9, 421 P.3d 504 (2018). When a person appeals the department's revocation or suspension of their license,

> [t]he review must be limited to a determination of whether the department has committed any errors of law. The superior court shall accept those factual determinations supported by substantial evidence in the record: (a) That were expressly made by the department; or (b) that may reasonably be inferred from the final order of the department.

RCW 46.20.308(8).

B. Admission of Blood Test Results

*1. Admission of Blood Test Results is Governed by WAC 448-14-020(3) and RCW 46.61.506(3)*

Pursuant to RCW 46.61.506(3), in order for test results from blood and breath analyses to be valid and admissible, the tests must be "performed according to methods approved by the state toxicologist." The standards set forth by the state toxicologist for blood testing are outlined in WAC 448-14-020.

WAC 448-14-020(1)-(3) outline the analytical and reporting procedures for blood testing, as well as the requirements for the sample container and preservative in which blood is stored pending testing. According to the code, blood samples for alcohol must use "[a] chemically clean dry container consistent with the size of the sample with an inert leak-proof stopper." WAC 448-

6

14-020(3)(a). Additionally, "[b]lood samples for alcohol analysis must be preserved with an anticoagulant and an enzyme poison sufficient in amount to prevent clotting and stabilize the alcohol concentration. Suitable preservatives and anticoagulants include the combination of sodium fluoride and potassium oxalate." WAC 448-14-020(3)(b). WAC 448-14-020 makes no reference to an expiration date for the sample container and preservative.

### 2. The Department Must Provide Prima Facie Evidence that the Tests Complied with Necessary Criteria

"The Department has the initial burden of establishing a prima facie case that blood preservation and testing were correctly performed and, therefore, free of adulteration that could produce error." *Singh*, 5 Wn. App. 2d at 8.

" 'When the protocols . . . and existing Code provisions are followed, there is sufficient assurance of accuracy and reliability of the test results to allow for general admissibility of test results.' " *City of Seattle v. Allison*, 148 Wn.2d 75, 80, 59 P.3d 85 (2002) (alteration in original) (quoting *State v. Straka*, 116 Wn.2d 859, 870, 810 P.2d 888 (1991)). The State must show that the blood sample and the chemicals used in the blood test are free from adulteration. *State v. Brown*, 145 Wn. App. 62, 69-70, 184 P.3d 1284 (2008). " '[A] blood sample analysis is admissible to show intoxication under RCW 46.61.502 only when it is performed according to WAC [ ]requirements.' " *Id.* at 70 (first alteration in original) (quoting *State v. Hultenschmidt*, 125 Wn. App. 259, 265, 102 P.3d 192 (2004)).

In *Brown*, Division Three of this court explained that the administrative code

requires only that the blood samples "be preserved with an anticoagulant and an enzyme poison sufficient in amount to prevent clotting and stabilize the alcohol concentration." [ ] Further, there is a relaxed standard for foundational facts under the blood alcohol statute in that the court assumes the truth of the State's evidence and all reasonable inferences from it in a light most favorable to the State.

*Id.* at 71 (internal citation omitted) (quoting WAC 448-14-020(3)(b)).

Brown argued that because the State did not present firsthand testimony regarding the substances contained in the vials used to draw his blood, there was "no evidence that the vials contained the requisite chemicals before the blood draw," and therefore, the blood tests were improperly admitted. *Id.* at 70-71. The court disagreed, concluding that the State did, in fact, provide sufficient evidence that the blood tests complied with necessary requirements under WAC 448-14-020(3)(b) and RCW 46.61.506(4)(b).

The court based this conclusion, in part, on testimony from the toxicologist. In his testimony, the toxicologist identified the chemicals in the vials as potassium oxalate and sodium fluoride; stated that the labels on the vials indicated that they contained these chemicals; and explained that without the presence of those chemicals, the blood would clot and a test would not detect alcohol, but as he observed, "the samples [were] not clotted and alcohol was detected in the samples." *Id.* at 71. The court concluded that based on this testimony, the State "provided sufficient evidence, under RCW 46.61.506(4)(b), that the vials contained the WAC-approved substances in sufficient amounts to stabilize and preserve the blood samples." *Id.*

Once the department satisfies its initial burden of producing prima facie evidence establishing that the test complied with the code, the test results are admissible. *State v. Straka*, 116 Wn.2d 859, 875, 810 P.2d 888 (1991); *State v. Clark*, 62 Wn. App. 263, 271, 814 P.2d 222 (1991). "A defendant still has the opportunity to attack the test results," and may refute the "accuracy and reliability of the test reading." *Straka*, 116 Wn.2d at 875. However, these arguments go to the weight rather than the admissibility of the evidence, and are for the trier of fact to decide. *Clark*, 62 Wn. App. at 271; *Straka*, 116 Wn.2d at 875

II. APPLICATION

Kanta argues that the department failed to satisfy the foundational requirements for admitting her blood test, because the tubes expired before the blood was tested. The department counters that it met its burden for admission of the test by presenting prima facie evidence that Kanta's blood sample complied with WAC 448-14-020 and RCW 46.61.506(3). We agree with the department.

As it relates to the container in which a blood sample is stored following its collection, WAC 448-14-020(3) provides that blood samples must be placed in a "[a] chemically clean dry container consistent with the size of the sample with an inert leak-proof stopper," and "must be preserved with an anticoagulant and an enzyme poison sufficient in amount to prevent clotting and stabilize the alcohol concentration." The code explains that "[s]uitable preservatives and anticoagulants include the combination of sodium fluoride and potassium oxalate." WAC 448-14-020(3)(b). Kanta does not take issue with the procedures involving the reporting or analysis of her blood. Rather, she confines her complaint to the manner in which her blood was stored prior to testing because although the tubes had not yet expired at the time her blood was collected and placed inside the tubes, they expired roughly four months after collection and her blood was not tested for another six months after that.

The department presented three exhibits to the hearing examiner: a certificate of compliance for the blood collection tube used, the report from law enforcement, and a credential verification from the Department of Health. The certificate of compliance establishes that the tube used in Kanta's blood sample met the necessary requirements for preservatives and anticoagulants. According to the certificate of compliance, the tube used in Kanta's blood test contained 18 to 23

milligrams of potassium oxalate and 90 to 115 milligrams of sodium fluorite. The certificate also established that the tubes were certified to be sterile and complied with manufacturing regulations.

The fact that the hearing examiner admitted the certificate of compliance into evidence distinguishes Kanta's case from *Singh*. In *Singh*, the court held that the hearing examiner erred in concluding that the "Department produced prima facie evidence of compliance with the WAC." *Singh*, 5 Wn. App. 2d at 11. The hearing examiner in that case did not admit the certificate of compliance into evidence, after Singh argued that it must be excluded because it was not signed under penalty of perjury. *Id*. at 5-6. The only other evidence submitted by the department regarding Singh's blood sample was a certification of the testing process provided by the forensic scientist who tested Singh's blood. *Id*. The court concluded that the certification from the scientist was not sufficient to establish compliance with WAC 448-14-020(3). *Id*. at 10. The court reasoned that the scientist could not "certify the performance of tasks that she did not perform herself," and explained that she did "not provide information about the contents of those tubes," meaning that the report "lack[ed] the crucial information about the presence of anticoagulants and enzyme poison required to prove compliance with WAC 448-14-020(3)." *Id*.

In contrast, the hearing examiner in Kanta's case did admit the certificate of compliance, which provided the necessary information regarding the presence of preservatives and anticoagulants that was lacking in *Singh*. Furthermore, Deputy Corn stated in his report that "[p]rior to providing this blood kit to the phlebotomist I checked to make sure that the tubes were in good condition, were not expired, and that the white preservative anticoagulant powder was present in the tubes." CP at 48.

The department met its burden of providing prima facie evidence that Kanta's blood test complied with necessary requirements as designated by the state toxicologist and outlined in WAC 448-14-020. As the *Brown* court explained, "The regulation requires only that the blood samples 'be preserved with an anticoagulant and an enzyme poison sufficient in amount to prevent clotting and stabilize the alcohol concentration.' " *Brown*, 145 Wn. App. at 71 (quoting WAC 448-14-020(3)(b)). Moreover, the court draws "all reasonable inferences from it in a light most favorable to the State." *Id*.

Kanta focuses all of her arguments on the admissibility of her blood test. The WAC does not require that the blood in the test tubes be tested prior to the expiration of the tubes. As we note above, once the department satisfies its initial burden of producing prima facie evidence establishing that the test complied with the code, the test results are admissible. *Straka*, 116 Wn.2d at 875; *Clark*, 62 Wn. App. at 271. A defendant may nevertheless contest the "accuracy and reliability of the test reading." *Straka*, 116 Wn.2d at 875. Here, the hearing examiner considered Kanta's challenge to the persuasiveness of the blood test evidence and concluded that the blood test was reliable.

## CONCLUSION

We hold that the hearing examiner properly admitted the blood test evidence at Kanta's administrative hearing and affirm the superior court [1] We affirm.

---

[1] Amicus Curiae Washington Foundation for Criminal Justice raises the same issue as Kanta regarding admissibility of the blood test, as well as two additional issues not raised by Kanta and not raised below. We do not consider issues raised only by amicus. *Citizens for Responsible Wildlife Mgmt. v. State*, 149 Wn.2d 622, 631, 71 P.3d 644 (2003). We are not persuaded by amicus's other arguments.

No. 58434-4-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, C.J.

We concur:

MAXA, J.

GLASGOW, J.